**Albert MOORE, Petitioner-Appellee,**

**v.**

**John DeYOUNG, Warden, Passaic County Jail, and Frank Davenport, Sheriff, Respondents-Appellants.**

**No. 74–1858.**

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1975.

Decided April 8, 1975.

Before SEITZ, Chief Judge, and AL-DISERT and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

■ The petitioner Moore has been exposed to state court trial in New Jersey since 1967, as a result of his having been charged with the commission of a crime in January of that year. The sequence of events recited below ultimately presents this question for resolution: Should a federal court grant a writ of habeas corpus and enjoin an ongoing state criminal proceeding before the petitioner has stood trial and before the state courts have ruled on the merits of his claim that a speedy trial has been denied? The district court answered the questions affirmatively; issued the writ and enjoined further state proceedings by its order of June 21, 1974. The respondent Passaic County Prosecutor appeals. In resolving the questions we apply two important principles controlling the sensitive area of state-federal relations: (1) the normal requirement that state appellate courts be given the initial opportunity to consider the federal constitutional claim; and (2) the teaching of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

Despite our distress with the manner in which a state law enforcement office has conducted the proceedings leading to the present prosecution, we nevertheless are obliged to reverse the district court and direct that the writ be denied and the injunction against state proceedings vacated.

## I. FACTS

On February 6, 1967, a complaint was filed in the Paterson, New Jersey, Municipal Court, charging Moore with the rape of a female infant on January 11, 1967. Following an investigation, the police on January 30, 1967 sent a teletype request to authorities in Richmond, Virginia, where Moore had previously lived and worked, notifying them that Moore was wanted for rape.

Stanley C. Van Ness, Public Defender, John H. Ratliff, Asst. Deputy Public Defender, East Orange, N. J., for petitioner-appellee.

Joseph D. J. Gourley, Passaic County Prosecutor, John P. Goceljak, Asst. Prosecutor, Paterson, N. J., for respondents-appellants.

On April 8, 1967, Moore was arrested in Richmond on an unrelated charge. On June 8, 1967, Indictment Number 641–66 was returned by the Passaic County Grand Jury, charging Moore with carnal abuse in violation of N.J.S.A. 2A:138–1. This indictment was followed by a warrant for Moore's arrest which ultimately resulted in the lodging of a detainer on August 3, 1967, against Moore's release from confinement in Virginia.[1]

Moore claims that he first learned of the indictment and resulting detainer when he appeared before a parole board in December 1968. On December 7, 1968, Moore sent his first letter to the Passaic County Prosecutor, asking that he be given a speedy trial or that the indictment be dismissed. This letter was followed by a document entitled "Petition for Speedy Trial" which Moore apparently sent to the Passaic County Court. This "Petition" prompted the Passaic County Assignment Judge to send a letter, dated January 30, 1969, to the Passaic County Prosecutor advising him that failure to bring Moore promptly to trial might result in dismissal of the indictment.

After receipt of the court's letter, the prosecutor's office undertook on February 11, 1969, to extradite Moore from Virginia. On March 25, 1969, the New Jersey Governor's Office forwarded to the Virginia Governor's Office a requisition and an executed Governor's Agreement for Moore's extradition to New Jersey. Neither this procedure, nor a simpler one available under Virginia law and recommended to the New Jersey authorities by the Assistant Attorney General of Virginia, was ever implemented. The prosecutor explains this failure to follow through on Moore's extradition as follows:

". . . This procedure, however, was not implemented, apparently because the assistant prosecutor handling the case left the Prosecutor's Office and the continuity of the matter was disrupted."

(Appellant's Brief at 6).

On April 16, 1969, Moore wrote another letter to the Passaic County Prosecutor in which he demanded that the charges against him be dropped for failure to grant a speedy trial. Subsequently, Moore prepared a handwritten "Motion for Dismissal", dated August 6, 1969, demanding either that he be brought to New Jersey for trial or that the detainer pending against him be withdrawn.

On May 7, 1970, the Virginia State prison authorities notified the Passaic County Sheriff that Moore would complete his sentence on June 30, 1970. Ultimately, Moore was returned to Passaic County where, on July 16, 1970, he was arraigned on Indictment 641–66 (charging carnal abuse) and pleaded not guilty.

Prior to trial, Moore's counsel filed a motion pursuant to New Jersey Rule 3:25–2[2] to dismiss the indictment on the grounds that Moore had been denied the right to a speedy trial and that no date certain (for trial) had been set. A hearing was held on September 25, 1970 which resulted in the granting of Moore's motion and the dismissal of the indictment. The state took no appeal.

Thereafter on July 20, 1971 (ten months after dismissal of the indictment charging Moore with carnal abuse), the Passaic County Grand Jury returned three new indictments charging Moore with atrocious assault and battery (Indictment No. 1004–71), threat to kill (Indictment No. 1005–71), and impairing the morals of a child (Indictment No.

1. Appellee Moore was convicted of burglary in Virginia and was sentenced to a five year term in the Virginia State Penitentiary. Moore commenced serving this term on May 3, 1968.

2. New Jersey Rule 3:25–2 provides:
"At any time after 6 months following the return of an indictment or the filing of an accusation, the Assignment Judge may, on his or on defendant's motion, direct that the trial thereof be moved upon a specified day. Upon failure of the prosecuting attorney to do so, the Assignment Judge may order the indictment or accusation dismissed. The dismissal shall be equivalent to a judgment of acquittal."

1006–71). Each of these new indictments was based on the incident of January 11, 1967, which had originally given rise to the (by then dismissed) carnal abuse indictment.

After arraignment on August 10, 1971 Moore moved to dismiss the three new indictments claiming double jeopardy and collateral estoppel. On October 29, 1971 Moore's motion was granted and all three indictments were dismissed. On appeal, the Appellate Division affirmed the dismissal of Indictment No. 1006–71 (impairing the morals of a minor) on the ground that the proofs required to establish the charge of "impairing" would coincide with those necessary to prove carnal abuse.

As to the remaining two indictments, however, the Appellate Division reversed the judgment of the trial court. It reasoned that:

". . . Inasmuch as neither atrocious assault and battery [Indictment No. 1004–71] nor threat to kill [Indictment No. 1005–71] is an essential element of the crime of carnal abuse, the dismissal of the carnal abuse charge does not operate to bar the prosecution of the defendant on the charges of atrocious assault and battery and threat to kill. . . ." (Citations omitted).

With respect to delay, the court concluded that in the absence of evidence of "actual prejudice" (caused by the delay in the return of the indictments) the indictments should not be dismissed. Aft-

er unsuccessfully seeking leave to appeal this ruling, Moore moved for and obtained an evidentiary hearing to demonstrate "prejudice." At the conclusion of the hearing on March 22, 1973, the court ruled that ". . . no actual prejudice . . . [was] caused by the delay in bringing the matter to trial . . .", and denied Moore's motion to dismiss the two indictments.[3]

Moore sought leave to appeal this order, first to the Appellate Division, and then to the New Jersey Supreme Court. Both applications for leave to appeal were denied; by the Appellate Division on May 10, 1973, and by the New Jersey Supreme Court on June 13, 1973. It was then (on June 19, 1973) that Moore filed his petition for a Writ of Habeas Corpus in the district court asserting denial of the right to a speedy trial guaranteed by the Sixth and Fourteenth Amendments. He sought discharge from custody and a permanent injunction against all state proceedings with respect to Indictment Nos. 1004–71 (atrocious assault and battery), and 1005–71 (threat to kill). On June 21, 1974, the district court granted Moore's petition for a Writ of Habeas Corpus and ordered that the state criminal proceedings be permanently stayed. This appeal followed.

## II.

■ For state prisoners, federal habeas corpus is substantially a post-conviction remedy, Peyton v. Rowe, 391 U.S. 54, 60, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1967); see 28 U.S.C. § 2254.[4] Neverthe-

3. In light of our disposition, we need not discuss the apparent difference between the opinion of the Appellate Division and the order of the trial court. The Appellate Division referred to a "time-frame" beginning with the commission of the offense charged (January 11, 1967) and ending with the date of the indictments (July 21, 1971). The trial court in its oral opinion discussed the same "time-frame", but its order focused on a different time period,—the period between indictment and trial. Although not argued to us, the issue of which "time-frame" is relevant and which is the applicable standard may be appropriate for presentation at the state court trial.

We note in this connection that although the trial court's order of March 22, 1973 makes no reference to entertaining at trial further proofs of "prejudice", the oral opinion of the trial court reserves to Moore the right to produce additional testimony of "prejudice" at trial.

4. 28 U.S.C. § 2254 provides in relevant part:

\* \* \* \* \* \*

"(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is

less, jurisdiction to issue the writ exists in the federal courts before a judgment is rendered in a state criminal proceeding. *See* 28 U.S.C. § 2241.[5]

■ In discussing exhaustion in the habeas corpus context, few cases discern between *pre-trial* and *post-trial* situations. With respect to state prisoners, it is only in the post-trial setting that exhaustion has been mandated by statute, 28 U.S.C. § 2254(b). 28 U.S.C. § 2241(c)(3), which empowers district courts to issue the writ before a judgment is rendered in a criminal proceeding, makes no reference to exhaustion. In this area, an exhaustion requirement has developed through decisional law, applying principles of federalism. The distinction between § 2241, pre-trial exhaustion, and § 2254, post-trial exhaustion, is recognized and discussed in Justice Rehnquist's dissent in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 503, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). For our purposes, it is sufficient to recognize that, although there is a distinction in the statutory language of §§ 2254 and 2241, there is no distinction insofar as the exhaustion requirement is concerned.

As early as 1886, the Supreme Court, in a pre-trial context held that:

" . . . where a person is in custody, under process from a State court of original jurisdiction, for an alleged offense against the laws of such State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court has a discretion, whether it will discharge him, upon habeas corpus, in advance of his trial in the court in which he is indicted . . .."

Ex parte Royall, 117 U.S. 241, 252–53, 6 S.Ct. 734, 741, 29 L.Ed. 868 (1886). More recently, the pre-trial availability of habeas corpus has been affirmed in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). In *Fay*, the Court had occasion to explain its earlier decision in Ex parte Royall, *supra*, as follows:

· " . . . The Court held [in Ex parte Royall, *supra*] that even in such a case the federal courts had the power to discharge a state prisoner restrained in violation of the Federal Constitution, see 117 U.S., at 245, 250–251 [6 S.Ct., at 739–740], but that ordinarily the federal court should stay its hand on habeas pending completion of the state court proceedings. This qualification plainly stemmed from considerations of comity rather than power, and envisaged only the postponement, not the relinquishment, of federal habeas corpus jurisdiction, which had attached by reason of the allegedly unconstitutional detention and could not be ousted by what the state court might decide. As well stated in a later case:

' . . . While the Federal courts have the power and may discharge the accused in advance of his trial, if he is restrained of his liberty in violation of the Federal Constitution or laws, . . . the practice of exercising such power before the question has been raised or determined in the state court is one which ought not to be encouraged. The party charged waives no defect of jurisdiction by submitting to a trial of his case upon the merits, and we think that comity

either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

\* \* \* \* \* \*

5. 28 U.S.C. § 2241 provides in relevant part:

\* \* \* \* \* \*

(c) The writ of habeas corpus shall not extend to a prisoner unless—

\* \* \* \* \* \*

(3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .."

\* \* \* \* \* \*

demands that the state courts, under whose process he is held, and which are equally with the Federal courts charged with the duty of protecting the accused in the enjoyment of his constitutional rights, should be appealed to in the first instance. Should such rights be denied, his remedy in the Federal court will remain unimpaired.' [Cook v. Hart, 146 U.S. 183, 194–195 [13 S.Ct. 40, 43–44, 36 L.Ed. 934] (1892) other citations in footnote omitted].

These decisions fashioned a doctrine of abstention, whereby full play would be allowed the States in the administration of their criminal justice without prejudice to federal rights enwoven in the state proceedings. Thus the Court has frequently held that application for a writ of habeas corpus should have been denied "without prejudice to a renewal of the same after the accused had availed himself of such remedies as the laws of the State afforded . . .." Minnesota v. Brundage, 180 U.S. 499, 500–501 [21 S.Ct. 455, 456, 45 L.Ed. 639]. *See also* Ex parte Royall, *supra* [17 U.S.] at 254 [6 S.Ct., at 741]. With refinements, this doctrine requiring the exhaustion of state remedies is now codified in 28 U.S.C. § 2254. [footnote omitted] But its rationale has not changed: 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation . . .. Solution was found in the doctrine of comity between courts, a doctrine which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.' Darr v. Burford, 339 U.S. 200, 204 [70 S.Ct. 587, 590, 94 L.Ed. 761]. The rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.' Bow-

en v. Johnston, 306 U.S. 19, 27 [59 S.Ct. 442, 446, 83 L.Ed. 455]. *Cf.* Stack v. Boyle, 342 U.S. 1 [72 S.Ct. 1, 96 L.Ed. 3]; Frisbie v. Collins, 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541]; Douglas v. Green, 363 U.S. 192 [80 S.Ct. 1048, 4 L.Ed.2d 1142]."

372 U.S. at 418–20, 83 S.Ct. at 837.

■■■■ The teaching derived from these authorities may be stated as:

(1) federal courts have "pre-trial" habeas corpus jurisdiction;

(2) that jurisdiction without exhaustion should not be exercised at the pre-trial stage unless extraordinary circumstances are present. *See* Frisbie v. Collins, 342 U.S. 519, 520–521, 72 S.Ct. 509, 96 L.Ed. 541 (1952); Reid v. Jones, 187 U.S. 153, 154, 23 S.Ct. ·89, 47 L.Ed. 116 (1902); United States ex rel. Richardson v. Rundle, 461 F.2d 860, 864–65 (3d Cir. 1972), cert. denied, 410 U.S. 911, 93 S.Ct. 971, 35 L.Ed.2d 273 (1973);

(3) where there are no extraordinary circumstances and where petitioner seeks to litigate. the merits of a constitutional defense to a state criminal charge, the district court should exercise its "pre-trial" habeas jurisdiction only if petitioner makes a special showing of the need for such adjudication and has exhausted state remedies. *Braden, supra.*

With these principles in mind, we turn to Moore's arguments to determine whether he has demonstrated such extraordinary circumstances or has exhausted state court remedies on the merits.

### III.

Moore seeks the writ of habeas corpus and injunctive relief based on the denial of his right to a speedy trial under the Sixth and Fourteenth Amendments. He argues: (1) the state trial court, in a pre-trial hearing, refused to hold that he was prejudiced by "delay" and refused to order the state charges dismissed; (2) the New Jersey appellate courts have denied his applications for leave to appeal that order; (3) he should not " . . be forced to endure a criminal trial

which is unfair from the beginning because of delay and incident prejudice. . . . Trial [itself] would be the governmental act which would violate [his] right to speedy trial . . . ." (Appellee's Brief at 16). Thus, Moore concludes that since he has no further avenue for relief in the state courts short of the trial itself and since it is his alleged "right not to stand trial" which is at issue, he will be irreparably injured unless he is afforded federal habeas corpus and injunctive relief before trial in the New Jersey state court commences. In support of his contention, Moore directs this Court's attention to Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) which, he argues, is dispositive of the present case.

Braden, like the present case, involved an application for a writ of habeas corpus in which the petitioner alleged denial of his constitutional right to a speedy trial. The petitioner in Braden was confined in an Alabama state prison. He sought to challenge the validity of a Kentucky detainer which had been lodged against his release from custody in Alabama. While the Supreme Court granted certiorari to consider a choice of forum question, not relevant to disposition of the present case, the Court also considered whether petitioner was entitled to raise his claim of denial of a speedy trial prior to actually standing trial on the Kentucky indictment. Since the Supreme Court in Braden ultimately concluded that petitioner could raise his speedy trial claim on a petition for habeas corpus before standing trial on the Kentucky indictment, petitioner Moore urges that Braden dictates the same result in the present case.

We believe that Moore's argument fails because of two critical distinctions between Braden and the present case. First, in Braden, the Supreme Court emphasized that state courts had the opportunity to consider the merits of the speedy trial issue before Braden applied for habeas corpus relief in the district court.

" . . . petitioner has exhausted all available state remedies as a prelude to this action. . . . He has made repeated demands for trial to the courts of Kentucky, offering those courts an opportunity to consider on the merits his constitutional claim of the present [emphasis in original] denial of a speedy trial. Under these circumstances it is clear that he has exhausted all available state court remedies for consideration of that constitutional claim, even though Kentucky has not yet brought him to trial. . . The fundamental interests underlying the exhaustion doctrine have been fully satisfied in petitioner's situation. . . . " (emphasis added)

410 U.S. 489–91, 93 S.Ct. 1127.[6] By contrast, the New Jersey appellate courts have not had the opportunity of considering Moore's claim of denial of a speedy trial.

■ Under New Jersey procedure, Moore was not entitled, as of right, to appeal the pre-trial order of the state judge regarding "lack of prejudice." Rather, Moore's applications to the Appellate Division and to the New Jersey Supreme Court were motions for "leave to appeal." N.J.Ct.R. 2:2–4; 2:2–2,[7] see

---

**6.** We do not read the Supreme Court's reference to "exhaustion" in Braden as pertaining solely to the statutorily mandated "exhaustion" requirement of 28 U.S.C. § 2254 which applies when a petitioner is " . . . in custody pursuant to the judgment of a State court . . . ." Rather, we believe that the Court used the term "exhaustion" in a generic sense which included the strong federal policy against entertaining an application for habeas corpus relief (absent extraordinary circum-

stances) before trial in a state court. (See page 442 supra).

**7.** N.J.Ct.R. 2:2–4 provides:

"The Appellate Division may grant leave to appeal, in the interest of justice, from an interlocutory order of a court or of a judge sitting as a statutory agent, or from an interlocutory decision or action of a state administrative agency or officer, if the final judgment, decision or action thereof is appeala-

N.J.Ct.R. 2:2–5.[8] Denial of Moore's motions seeking interlocutory review did not constitute a ruling by either the Appellate Division or the Supreme Court on the merits of Moore's speedy trial claim. Nor did it, for purposes of the exhaustion requirement, constitute an opportunity to consider Moore's constitutional claim on the merits. *Cf.* Francisco v. Gathright, 419 U.S. 59, 95 S.Ct. 257, 42 L.Ed.2d 226 (1974). *See* United States ex rel. Geisler v. Walters, No. 79–1345 (3d Cir. Feb. 5, 1975). In Picard v. Connor, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), the Supreme Court indicated that "exhaustion" means exhaustion of the very issue which forms the basis for relief sought in the federal courts. The Supreme Court stated:

"We emphasize that the federal claim must be fairly presented to the state courts. . . . [I]t is not sufficient merely that the federal habeas applicant has been through the state courts. The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. . . . Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. . . . " (citations omitted).

Moore did not exhaust his state court remedies prior to application for federal habeas corpus relief. This issue is still available to Moore as an affirmative defense at trial and thereafter, on appellate review. Indeed, the trial court expressly recognized that additional evidence as to prejudice on the issue of delay could be adduced at trial.

Second, the present case is unlike *Braden, supra,* in the purpose for which pre-trial habeas corpus relief was sought. In *Braden,* the court was careful to note:

" . . . [P]etitioner made no effort to abort a state proceeding or to disrupt the orderly functioning of state judicial processes. He comes to federal court, not in an effort to forestall a state prosecution, but to enforce the Commonwealth's obligation to provide him with a state court forum. He delayed his application for federal relief until the state courts had conclusively determined that his prosecution was temporarily moribund. . . .

We emphasize that nothing we have said would permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court. The contention in dissent that our decision converts federal habeas corpus into 'a pretrial-motion forum for state prisoners,' wholly misapprehends today's holding."

410 U.S. at 491, 493, 93 S.Ct. at 1128. Here, by contrast, Moore does not seek to enforce the state's duty to provide him with a trial. (Indeed, it would appear, from the determination with which the Passaic County Prosecutor pursues the present appeal, that the state, now, is more than willing to provide Moore with a state court trial—whatever may have been its past derelictions of that duty.) Rather, Moore seeks to abort a trial in the state courts. As indicated, *supra, Braden* specifically cautioned that its holding should not be construed as authorizing pre-trial habeas interference by federal courts in the normal function-

---

ble as of right pursuant to R. 2:2–3(a), but no such appeal shall be allowed in cases referred to in R. 2:2–2(a)."
N.J.Ct.R. 2:2–2 provides:
    "Appeals may be taken to the Supreme Court by its leave from interlocutory orders:
    (a) Of trial courts in cases where the death penalty has been or may be imposed and in post-conviction proceedings in cases in which the death penalty was imposed.
    (b) Of the Appellate Division when necessary to prevent irreparable injury;

    (c) On certification by the Supreme Court to the Appellate Division pursuant to R. 2:12."

8.  N.J.Ct.R. 2:2–5 provides:
    "A judgment of the Appellate Division on an appeal to it from an interlocutory order, decision or action shall be deemed to be interlocutory and not appealable to the Supreme Court as a final judgment, unless the judgment of the Appellate Division is dispositive of the action."

ing of state criminal processes. We believe that the present case is precisely the situation anticipated by the Supreme Court's caveat that federal courts should not permit the claimed denial of a speedy trial, presented in a pre-trial application for habeas, to result in the "derailment of a pending state proceeding."

■ Both before [9] and after [10] *Braden,* cases involving speedy trial issues required state exhaustion in advance of federal habeas corpus consideration. *Braden,* as we have noted, reinforces that requirement—a requirement not met by Moore. Thus, if Moore is to prevail, he can do so only by demonstrating "extraordinary circumstances" which would, by their very nature, obviate the exhaustion requirement.

## IV.

In an effort to bypass the state exhaustion requirement, Moore contends that his constitutional right to a speedy trial is so unique that it should bar not only a conviction (for the underlying offense), but the trial for that offense as well. That unique quality, Moore claims is coterminous with and equated to the "extraordinary circumstances" which permit habeas relief prior to state exhaustion.

■ From the premise that he has a right not to stand trial, Moore proceeds to the conclusion that, to avoid the threatening state trial, there must be some pre-trial forum (if not a state forum, then a federal forum) available to test the merits of his constitutional claim. Otherwise, he argues, he would be required to undergo the rigors of trial to vindicate his claim that the state court can no longer bring him to trial. *Cf.* United States v. Lansdown, 460 F.2d 164, 171 (4th Cir. 1972) (wherein a similar argument was advanced in a double jeopardy context. There, on direct appeal, the appellant sought " . . . to be free from being twice forced to stand trial for the same offense . . . ").[11]

■ We are not prepared to hold that either the chronology of events leading to this prosecution or the alleged denial of Moore's right to a speedy trial, constitutes such "extraordinary circumstances" as to require federal intervention prior to exhaustion of state court remedies. We perceive nothing in the nature of the speedy trial right to qualify it as a *per se* "extraordinary circumstance." We know of no authority, either pre- or post-*Braden, supra,* that excepts or singles out the constitutional issue of speedy trial as an extraordinary circumstance sufficient to dispense with the exhaustion requirement. To the contrary, the cases in which the speedy trial claim has been raised in a pre-trial habeas context have granted the writ only after exhaustion on the merits in the state courts (*see* III *supra* ).

In this Circuit, some years before *Braden,* we affirmed the denial of habeas corpus where the petitioner, prior to trial, advanced the same argument as Moore does here. In that case, Matzner v. Davenport, 288 F.Supp. 636 (D.N.J. 1968), aff'd, 410 F.2d 1376 (3d Cir. 1969), cert. denied, 396 U.S. 1015, 90 S.Ct. 570,

9. *See* Kane v. Virginia, 419 F.2d 1369 (4th Cir. 1970) and cases cited in *Braden, supra,* 410 U.S. at 493 n.6, 93 S.Ct. 1123.

10. *See* McEachern v. Henderson, 485 F.2d 694 (5th Cir. 1973).

11. Whatever may be the claim of a "double jeopardy" defendant to pre-trial, pre-exhaustion habeas corpus relief, we neither decide nor consider here. One major substantive difference in the nature of the two claims ("double jeopardy" and "speedy trial") is readily apparent. A double jeopardy claimant has once endured the rigors of a criminal trial. Moore, by contrast, has not yet stood trial on any of the indictments arising out of the alleged criminal assault. Thus, the constitutional and policy considerations, which may entitle a defendant claiming *double jeopardy* to have that claim considered in a pre-trial federal habeas petition before state court exhaustion of that issue on the merits do not apply with equal force to Moore's "speedy trial" contention. Accordingly, any reliance by Moore on double jeopardy cases (*see, e. g.,* United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896); Fain v. Duff, 488 F.2d 218 (5th Cir. 1973); United States ex rel. Russo v. Superior Court, 483 F.2d 7 (3d Cir.), cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973)) is misplaced.

24 L.Ed.2d 506 (1970), the Court held the petition to be premature and quoted with approval the following language from United States ex rel. Lowry v. Case, 283 F.Supp. 744 (E.D.Pa.1968):

> " . . . the petition is premature. I have found no case in which federal habeas was invoked for failure of a speedy state trial *in advance of the trial.* This is hardly surprising, for it may well be that the defendant would be acquitted at trial. Or it may be that even if convicted, relator would be unable to demonstrate that he was unfairly prejudiced by the delay." (emphasis supplied)

288 F.Supp. at 639.

In Kane v. Virginia, 419 F.2d 1369, 1372 (4th Cir. 1970), the Fourth Circuit (also pre-*Braden*) stated in its discussion of federal habeas corpus relief prior to state trial:

> "Although federal habeas corpus relief is not ordinarily available to a state prisoner before trial, the peculiar nature of the right to a speedy trial requires an exception to this rule. . . Only a present remedy can lift its dual oppressions. . . . " (citation omitted).

On its face, it would appear that this statement supports the position taken by the petitioner Moore. However, the quoted language cannot afford comfort or support to petitioner Moore, for in disposing of Kane's contentions, that Court, held that, despite the "peculiar nature of the right", federal habeas corpus was available *only* after the exhaustion of all available state remedies.

Hence, even in those cases to which we have been referred where "extraordinary circumstances" were alleged in a speedy trial petition, the courts have required state exhaustion prior to federal habeas corpus availability. This is not to say that in a particular "extraordinary circumstance" (above and beyond the mere fact of denial of speedy trial) the exhaustion obstacle could not be surmounted. Justice Rehnquist, in his dissenting opinion in *Braden,* justifies pre-trial federal interference by way of habeas corpus in situations where jurisdiction is lacking for the state to bring any criminal charges against the petitioner. 410 U.S. at 508, 93 S.Ct. 1123.

■ Here, we need not decide the boundaries of "extraordinary circumstances" sufficient to warrant pre-trial interference. Suffice it to say whatever may be the limits or contours of the "extraordinary circumstances" exception, Moore's petition falls outside those limits.[12]

■ Moore having failed to exhaust his state remedies on the merits and having failed to present an "extraordinary circumstance" which would warrant pre-trial, pre-exhaustion habeas corpus relief, we conclude that the district court erred as a matter of law[13] in granting Moore's petition.

## V.

■ The district court's order granting the writ of habeas corpus also enjoined state proceedings in connection with the two indictments under which Moore was charged. Had the writ properly issued, we would not question an injunction as appropriate in aid of the writ and the court's jurisdiction. *See* 28 U.S.C. § 1651. With the denial of the writ, however, the question to be resolved is whether Younger v. Harris, *supra,* precludes injunctive relief.

In Helfant v. Kugler, 500 F.2d 1188, 1192–93 (3d Cir.), cert. granted, 419 U.S. 1019, 95 S.Ct. 492, 42 L.Ed.2d 292 (1974), we analyzed *Younger* as follows:

> "Younger v. Harris, *supra,* 401 U.S. at 53, 91 S.Ct. at 755, holds that a

---

**12.** Despite the fact that the instant record reveals manifest shortcomings by the prosecutor's office and negligence in the conduct of Moore's prosecution (starting in 1967), it does not reveal that quality of delay, harassment, bad faith or other intentional activity which, in an appropriate situation, might constitute an "extraordinary circumstance", justifying pre-exhaustion federal habeas relief.

**13.** *See* United States ex rel. Davis v. Johnson, 495 F.2d 335 (3d Cir. 1974); United States ex rel. Stone v. Robinson, 431 F.2d 548 (3d Cir. 1970) (discussing the standard of review for habeas appeals).

federal court should not enjoin a pending state prosecution in the absence of a showing of bad faith, harassment or other 'extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.' Conover v. Montemuro, 477 F.2d 1073, 1080 (3d Cir. 1973); *see,* Lewis v. Kugler, 446 F.2d 1343 (3d Cir. 1971). Neither the Supreme Court nor this court has considered what extraordinary circumstances will justify federal intervention in a pending state prosecution. But the predicate of Younger v. Harris is an assumption that defense of the pending state prosecution affords an adequate remedy at law for the vindication of the federal constitutional right at issue. Thus, invocation of the "extraordinary circumstances" exception must bring into play the suggestion of an inability of the state forum to afford an adequate remedy at law.

Although the doctrines of "habeas corpus-exhaustion" and "Younger-abstention" are not directly related, they share many characteristics in common. They are both predicated upon interests of federalism and comity; they both recognize exceptions for "extraordinary circumstances"; both doctrines are doctrines of judicial restraint; they both envisage adequate state remedies; and, they both bar petitioners who seek to abort state prosecutions, prior to trial or final state review.

In Younger v. Harris, *supra,* the Supreme Court specifically addressed the question of when federal courts should exercise their discretion to enjoin a pending state criminal prosecution. The court concluded that there must be irreparable injury, "both great and immediate," before such an injunction is warranted. In so stating, the court wrote:

" . . . Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that

term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. . . . "
401 U.S. at 46, 91 S.Ct. at 751.

In Douglas v. City of Jeanette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943) the court stated:

" . . . Congress, by its legislation, has adopted the policy, with certain well defined statutory exceptions, of leaving generally to the state courts the trial of criminal cases arising under state laws, subject to review by this Court of any federal questions involved. Hence, courts of equity in the exercise of their discretionary powers should conform to this policy by refusing to interfere with or embarrass threatened proceedings in state courts save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent . . . .

It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. . . "

Just as in the habeas corpus context, the Supreme Court in the *Younger* setting *did not define what would constitute an "extraordinary circumstance".* *See* Helfant v. Kugler, *supra.* We already know, however, that for purposes of pre-trial habeas corpus relief, courts have held that a denial of speedy trial alone, and without more, does not constitute an "extraordinary circumstance".

■ We do not suggest that the dimensions of "extraordinary circumstance" in the habeas corpus area are necessarily the same as in the *Younger* area. Nonetheless, it would seem anomalous to hold that the same speedy trial claim which could not suffice for pre-trial habeas relief would, nonetheless, support a pre-trial injunction of a pending state prosecution. Aside from any other consideration, we would be hard pressed

to reconcile such disparate results stemming from doctrines evidencing similar principles of federalism and comity.

In a slightly different context, the Supreme Court, while acknowledging that an accused is entitled to scrupulous observance of constitutional safeguards, nevertheless stated:

"Bearing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship. The correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction ·before its reconsideration by an appellate tribunal." (citation omitted).

Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 541, 84 L.Ed. 783 (1940).

In United States v. Kenny, 462 F.2d 1230 (3d Cir. 1972), we reversed the district court's grant of an injunction against pending state criminal proceedings, despite the defendant's claim that his grant of immunity in prior federal proceedings should bar any subsequent state prosecution. We stated:

"The record fails to demonstrate that the pending state prosecution posed any threat to defendant's rights that could not be eliminated by assertion of an appropriate defense in the state courts. . . ."

462 F.2d at 1232. We are satisfied that Moore's claim of alleged denial of the right to a speedy trial does not fall within the extraordinary circumstances envisioned in *Younger*. Petitioner Moore will have an opportunity to raise his claimed denial of the right to a speedy trial during his state trial and in any subsequent appellate proceedings in the state courts. Once he has exhausted state court remedies, the federal courts will, of course, be open to him, if need be, to entertain any petition for habeas corpus relief which may be presented. These available procedures amply serve to protect Moore's constitutional rights without pre-trial federal intervention in the orderly functioning of state criminal processes.

We will, therefore, reverse the Order of the district court and direct that the petition for habeas corpus be dismissed and the injunction against state prosecution be vacated. This disposition makes it unnecessary for us to reach the substantive issue of Petitioner's claimed denial of the right to a speedy trial, as to which we express no opinion.

SEITZ, Chief Judge, concurs in the result.

SEITZ, Chief Judge (concurring).

I concur in the result. The emphasis by the Supreme Court in Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), on the fact that the petitioner there did not seek to abort a state proceeding compels me to conclude that where, as here, a "derailment of a pending state proceeding" is sought, intervention by a federal court cannot be permitted.