PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2283
_____

ZACHARY WILSON,

Appellant

v.

SECRETARY PENNSYLVANIA DEPARTMENT OF
CORRECTIONS;
DONALD VAUGHN, Superintendent of the State
Correctional Institution at Graterford
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-02-cv-00374)
District Judge:  Honorable John R. Padova
_____

Argued January 15, 2014
Before:  AMBRO, HARDIMAN and
GREENAWAY, JR., Circuit Judges

(Filed: March 16, 2015)

Michael Wiseman, Esq. [Argued]
P.O. Box 120
Swarthmore, PA 19081

*Attorney for Plaintiff-Appellant*

Thomas W. Dolgenos, Esq. [Argued]
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

*Attorney for Defendants-Appellees*

————————

OPINION OF THE COURT

————————

HARDIMAN, Circuit Judge

Appellant Zachary Wilson holds the remarkable distinction of having received writs of habeas corpus vacating not one, but two murder convictions. These victories have been Pyrrhic, however, as Wilson has remained incarcerated since the Commonwealth of Pennsylvania decided to prosecute him anew for both crimes. After his rearraignment in state court, Wilson promptly returned to federal court and filed motions seeking to bar a retrial. The District Court for the Eastern District of Pennsylvania denied Wilson's motions and he filed this appeal.

## I

The facts underlying Wilson's convictions have no bearing here, but the unusual procedural posture of the case requires us to describe in some detail what transpired in the state courts and in the District Court.

Wilson was convicted in 1984 by a jury in the Philadelphia County Court of Common Pleas of murdering David Swift and was sentenced to life in prison. Four years later, a different Philadelphia jury convicted him of an unrelated crime: the murder of Jamie Lamb. Wilson was sentenced to death for that offense, in part because of his previous conviction for murdering Swift.

After Wilson exhausted his direct and collateral appeals in state court, he filed a federal habeas petition under 28 U.S.C. § 2254 claiming that his conviction in the Swift case was unconstitutional because the jury was empaneled in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). On April 19, 2004, the District Court granted the writ, stating:

> IT IS HEREBY ORDERED that the Petition for a Writ of Habeas Corpus is GRANTED. IT IS FURTHER ORDERED that [Wilson's] convictions of May 16, 1984 for First Degree Murder and Possessing an Instrument of Crime . . . are VACATED. The Commonwealth of Pennsylvania may retry [Wilson] on these charges within 180 days of the date of this Order.

3

*Wilson v. Beard*, 314 F. Supp. 2d 434, 450 (E.D. Pa. 2004). The District Court's opinion in support of its order noted that Wilson was on death row for his conviction in the Lamb murder. *Id*. at 439. The Commonwealth appealed the order of the District Court and we affirmed. *Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005).

At no point during the federal court proceedings in the Swift case did the Commonwealth ask the District Court to stay its order pending appeal or for an extension of the 180-day period established by the District Court. Yet Wilson was neither retried nor released because he was on death row for the Lamb murder. Between November 2, 2005, and February 18, 2010, there was no activity in the case.

After the District Court vacated Wilson's conviction for the Swift murder and while that order was under review by our Court, he filed a petition for writ of habeas corpus seeking to invalidate his conviction for the Lamb murder. This time, Wilson claimed the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory information that would have allowed him to impeach the three main witnesses against him. The District Court conditionally issued a writ in August 2006, stating that the Commonwealth "may retry [Wilson] on these charges within 180 days of the date of this Order," *Wilson v. Beard*, 2006 WL 2346277, at *17 (E.D. Pa. Aug. 9, 2006). Once again, the Commonwealth appealed and we affirmed the order of the District Court. *Wilson v. Beard*, 589 F.3d 651 (3d Cir. 2009).

Soon after we affirmed the District Court's order granting Wilson habeas relief in the Lamb case, the Commonwealth moved to retry him for the Swift murder, nearly five and a half years after the District Court had

4

vacated that conviction. On January 22, 2010, the Philadelphia County Court of Common Pleas appointed counsel for Wilson in connection with the Swift retrial, and on February 16, 2010, he was arraigned.[1]

Two days later, Wilson filed a motion to enforce writ of habeas corpus in the District Court, seeking to prevent the Commonwealth from retrying him because it waited more than 180 days to do so. The District Court held argument on the motion to enforce and scheduled an evidentiary hearing. Prior to the scheduled hearing, Wilson filed a motion seeking relief under Rule 60(b)(6) of the Federal Rules of Civil Procedure.[2] As with his motion to enforce, Wilson contended the Commonwealth should be barred from retrying him because it had failed to do so within the 180 days required by the District Court's order. In the alternative—that is, if the Court interpreted "may retry . . . within 180 days" as "retry within 180 days or else release him"—Wilson requested an unconditional writ barring any retrial for the Swift murder. App. 12-13.

The District Court held four evidentiary hearings on the motions, after which the parties filed proposed findings of fact and conclusions of law. The District Court heard final argument on April 11, 2012.

---

[1] The Commonwealth also moved to retry Wilson for the Lamb murder, arraigning him in October 2010.

[2] The relevant portion of Rule 60(b) reads: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(6) any other reason that justifies relief."

Nine days later, Judge Padova issued a thorough opinion denying Wilson's motions. *Wilson v. Beard*, 2012 WL 1382447, *1 (E.D. Pa. April 20, 2012). He observed that Wilson "cite[d] no authority for the proposition that we may bar his retrial based solely on the Commonwealth's failure to retry him within 180 days," and he opined that Wilson's arguments "evidence[d] a misunderstanding of the nature of a conditional writ of habeas corpus." *Id*. at *5. According to the District Court, the Commonwealth's failure to retry Wilson within 180 days automatically converted the conditional writ to an absolute writ, which meant that after the deadline passed, the Commonwealth could no longer imprison Wilson based on the Swift murder conviction. *Id*. This was unavailing to Wilson, however, because he "was not held in custody in connection with his conviction for the Swift murder at any time after the [w]rit became absolute in this case." *Id*. at *6. In the District Court's view: "between January 7, 1988 and June 9, 2010, he was held as a convicted prisoner awaiting execution for the murder of Jamie Lamb. Since June 9, 2010, Wilson has been held as a pretrial murder defendant in connection with his retrials for both the Swift and Lamb murders." *Id*. Accordingly, the District Court held that its order granting the writ simply returned Wilson to the position he was in before his incarceration: under indictment for the crime. *Id*. Thus, even though the Commonwealth "failed to commence proceedings related to the retrial within the 180 day time period," it did not violate the terms of the writ. *Id*.

The District Court then denied Wilson's Rule 60(b) motion, which had sought essentially the same relief as the motion to enforce, but on more complex grounds. There, Wilson argued that he should not suffer a retrial "because the Commonwealth's delay in commencing the proceedings

6

related to his retrial . . . created extraordinary circumstances which may be remedied only by such relief." *Id.*

Wilson claimed extraordinary circumstances for three principal reasons. First, "the Commonwealth delayed commencing his reprosecution for the Swift murder for more than five years after [the District Court] granted the [w]rit." *Id.* at *7. Second, "during the time in which the Commonwealth delayed his retrial, his mental condition deteriorated to such an extent that he is no longer competent to stand trial." *Id.* Finally, his attorneys "recently discovered that the prosecution committed a *Brady* violation at his trial with respect to [a key prosecution witness, whose] mental condition has deteriorated so dramatically since 2005 that he would not be competent to testify at Wilson's retrial or to be cross-examined about the alleged *Brady* issue." *Id.* The Commonwealth opposed these claims on the merits, but also argued that they constituted a Sixth Amendment speedy trial claim that had to be exhausted in state court. *Id.*

The District Court agreed with the Commonwealth, both procedurally and substantively, observing that "[t]he prejudice Wilson claims he will suffer as the result of the . . . delay is clearly the kind of prejudice the speedy trial right was designed to protect against." *Id.* at *8. Because Wilson's claims of delay were new claims that arose after the District Court issued the writ in 2004 and were unrelated to the *Batson* claim that formed the basis for his petition, they had to be exhausted in state court. *Id.* at *9. The District Court also rejected Wilson's arguments that he was not required to exhaust his Rule 60(b) claims and that there was no remedy available to him in state court. *Id.* at *11–12. Alternatively, the District Court held that even if Wilson's claims did not

7

have to be exhausted, he had not established extraordinary circumstances. *Id*. at \*19.

After Wilson appealed only the District Court's denial of his Rule 60(b) motion, we asked counsel to brief the following issues presented by this appeal's unique procedural posture: (1) whether a certificate of appealability is required and "whether *Harbison v. Bell*, 556 U.S. 180 (2009), bears on that issue;" (2) whether the District Court had jurisdiction to adjudicate the motion to enforce and the Rule 60(b) motion; and (3) whether the Commonwealth complied with the District Court's conditional habeas order by vacating Wilson's conviction on the Swift murder.

II

We begin, as we typically do, with the question of jurisdiction. Although neither party claims the District Court lacked jurisdiction to adjudicate Wilson's motion to enforce or his Rule 60(b) motion, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties . . . elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

A

The parties assert that because Wilson is not appealing the denial of the motion to enforce, the question of whether the District Court had jurisdiction to entertain that motion is now moot. We agree, though it is worth noting that the District Court had the power to adjudicate the motion to

8

enforce. *See, e.g.*, *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (holding that district courts have "continuing jurisdiction to address alleged noncompliance with conditional writ of habeas corpus") (citing *Mickens-Thomas v. Vaughn*, 355 F.3d 294, 303 (3d Cir. 2004)).

The question of the District Court's jurisdiction over Wilson's Rule 60(b) motion is not so clear. The issue arises frequently after a petitioner is denied a writ of habeas corpus, but this appears to be our first opportunity to consider it after a petition was granted. Although we have found no controlling authority directly on point, the Supreme Court's decision in *Pitchess v. Davis*, 421 U.S. 482 (1975) (per curiam), suggests that the District Court had jurisdiction to adjudicate Wilson's Rule 60(b) motion. In *Pitchess*, a state prisoner (Davis), won conditional habeas relief and the state promptly moved to retry him. *Id*. at 483–84. In advance of the retrial, Davis learned that physical evidence had been destroyed in a routine purge after his original trial but before the conditional writ had issued. *Id*. at 484. Davis then filed a Rule 60(b) motion in the district court "seeking to 'modify' its prior conditional writ of habeas corpus and replace it with an order granting an absolute writ and enjoining any retrial on the pending state charges." *Id*. at 484–85. The district court granted the motion, concluding that the destruction of evidence not only violated *Brady*, but also constituted an incurable defect that precluded Davis from ever receiving a fair trial on the charges. *Id*. Following an affirmance by the Ninth Circuit, the Supreme Court reversed, holding that Davis had failed to exhaust state remedies on his destruction-of-evidence claim. *Id*. at 486–87, 490.

In its adjudication of the merits of Davis's appeal, the Supreme Court never suggested that the District Court lacked

9

jurisdiction to hear his Rule 60(b) motion. Likewise, in its most recent case interpreting the rule, the Supreme Court noted that "Rule 60(b) has an unquestionably valid role to play in habeas cases," including cases in which the writ has been granted. *Gonzalez v. Crosby*, 545 U.S. 524, 534 (2005). Accordingly, we hold that the District Court had jurisdiction to adjudicate Wilson's Rule 60(b) motion.

B

We next consider our jurisdiction given that the District Court denied a certificate of appealability (COA) under 28 U.S.C. § 2253(c). The Commonwealth claims a COA is required; Wilson disagrees.

In *Morris v. Horn*, 187 F.3d 333, 340–41 (3d Cir. 1999), we held that a COA is required to appeal the denial of a Rule 60(b) motion. However, the vitality of that decision is undermined somewhat by the Supreme Court's decision in *Harbison v. Bell*, which stated that the COA requirement "governs final orders that dispose of the merits of a habeas corpus proceeding—a proceeding challenging the lawfulness of the petitioner's detention." 556 U.S. at 183. Not all orders in habeas cases fit that description, including the motion at issue in *Harbison,* which was "[a]n order that merely denies a motion to enlarge the authority of appointed counsel." *Id*.; *see also Jones v. Ryan*, 733 F.3d 825, 832 n.3 (9th Cir. 2013) (suggesting a COA may not be necessary to appeal the denial or dismissal of "a valid Rule 60(b) motion," as opposed to one seeking habeas-style relief).

Irrespective of the impact of *Harbison*, this appeal does not require us to revisit our decision in *Morris v. Horn*. As Wilson argues, the Sixth Circuit's decision in *D'Ambrosio*

10

*v. Bagley*—which conflicts with the District Court's decision in this case—demonstrates that the issue Wilson presents is "debatable among jurists of reason." *See Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam). We therefore grant a COA limited to whether the District Court properly denied Wilson's motion to enforce and his Rule 60(b) Motion. Accordingly, our jurisdiction lies under 28 U.S.C. § 1291 and § 2253.[3]

## III

Turning to the merits of Wilson's appeal, the first and most important legal principle guiding our inquiry is that we analyze Rule 60(b) motions in the habeas context based on the substance of the claim, not the form. *Gonzalez*, 545 U.S. at 530–32. We exercise plenary review over the District Court's legal conclusion that Wilson had to exhaust state remedies. *Hankins v. Fulcomer*, 941 F.2d 246, 249 (3d Cir. 1991) ("[I]n a federal habeas corpus proceeding the determination of whether state remedies have been exhausted and whether exhaustion should be excused involves the application and interpretation of legal precepts." (citations omitted)).

---

[3] The Commonwealth relies on *Eddleman v. McKee*, 586 F.3d 409 (6th Cir. 2009), to argue that we lack jurisdiction over this appeal because the Commonwealth complied with the writ the District Court issued. As far as the motion to enforce is concerned, our precedent forecloses the argument. *See Gibbs*, 500 F.3d at 205–206. And as for the Rule 60(b) motion, *Eddleman* does not apply as it was not a Rule 60 case.

11

A

The crux of Wilson's argument is that he need not exhaust state remedies because he demonstrated "extraordinary circumstances" under Rule 60(b). We disagree.

"The power of a court to invoke Rule 60(b) to vacate its own earlier judgment is unquestioned." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 251 (3d Cir. 2008). Nevertheless, the Supreme Court has made clear that Rule 60 applies only to the extent it does not conflict with other statutes. *See Gonzalez*, 545 U.S. at 529. Because Wilson's Rule 60(b) motion raises new substantive claims unrelated to the original habeas petition, he must exhaust the claims in state court before a federal court can hear them unless "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The exhaustion requirement is not jurisdictional, "but rather addresses federalism and comity concerns by 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Coady v. Vaughn*, 251 F.3d 480, 488 (3d Cir. 2001) (alteration in original) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)). The state can waive the exhaustion requirement by failing to raise it, *Mickens-Thomas*, 321 F.3d at 376 n.2, but that did not happen here. "The habeas petitioner has the burden of proving exhaustion of all available state remedies." *Coady*, 251 F.3d at 488.

In *Pitchess*, the case we cited previously in support of our jurisdictional holding, the Supreme Court made clear that

the exhaustion requirement applies to new claims that a successful habeas petitioner may raise in a Rule 60(b) motion. 421 U.S. at 490. In that case, Davis obtained a writ of habeas corpus, but returned to the district court seeking additional relief on a new constitutional claim after the state moved to retry him. *Id*. at 484–85. Like Wilson here, Davis filed a Rule 60(b) motion seeking to "modify" the prior order "and replace it with an order granting an absolute writ and enjoining any retrial on the pending state charges." *Id*. at 485. Reversing the lower courts, the Supreme Court held that Davis was "entitled to no relief based upon a claim with respect to which state remedies have not been exhausted." *Id*. at 490. In doing so, the Court rejected the very same argument Wilson makes: that claims raised in a Rule 60(b) motion need not be exhausted. *Id*. at 489.

Wilson's attempt to avoid exhaustion in state court is foreclosed by *Pitchess*. His claims relating to the delayed retrial—which the District Court properly characterized as speedy trial claims—have never been presented to the state courts and are unrelated to the *Batson* violation for which he was granted habeas relief. As the District Court rightly noted, it would be improper for the federal courts "to intervene in [Wilson's] state court criminal proceedings to prevent the state court from committing possible future violations of his Constitutional rights." *Wilson*, 2012 WL 1382447 at *19.

B

Wilson attempts to distinguish *Pitchess* by relying heavily on the Sixth Circuit's decision in *D'Ambrosio v. Bagley*, 656 F.3d 379, 390 (6th Cir. 2011). In that case, D'Ambrosio received a conditional writ of habeas corpus because of a *Brady* violation. *Id*. at 381. The order required

13

the state to either set aside his conviction and sentence or conduct another trial within 180 days. *Id*. The state moved to retry him within the time allotted, but shortly before retrial was set to begin, the state notified the defense team about additional evidence, which caused the court to delay the trial beyond the 180-day window. *Id*. This prompted the state to ask the federal district court to extend the deadline for the retrial. *Id*. D'Ambrosio replied by asking the federal court to grant an unconditional writ and bar his reprosecution. *Id*. at 381–82. The federal court partially granted D'Ambrosio's motion by issuing an unconditional writ because of the state's continued misconduct. *Id*. at 382. The court declined to bar retrial, however, because D'Ambrosio could not demonstrate prejudice from the delay and the court had confidence in the state's ability to provide a fair retrial. *Id*.

Around the time the district court declined to bar retrial, the state's key witness died, which required the exclusion of his prior testimony under the Confrontation Clause. *Id*. D'Ambrosio then filed a Rule 60(b) motion asking the District Court to vacate its earlier order and bar his reprosecution in light of the witness's unavailability, as D'Ambrosio had planned to cross-examine the witness about the previously withheld *Brady* material. *Id*. The district court agreed, vacating a portion of its original judgment and reasoning that the circumstances were sufficiently "extraordinary" to bar D'Ambrosio's reprosecution. *Id*. at 383. The Sixth Circuit affirmed, holding that the district court had jurisdiction to grant the Rule 60(b) motion, vacate its prior judgment, and issue an unconditional writ of habeas corpus. *Id*.

The Sixth Circuit's opinion relied in part on its decision in *Satterlee v. Wolfenbarger*, which noted that

14

although the state usually is not precluded from retrying a successful habeas petitioner, "in extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period . . . a habeas court may forbid[] reprosecution." 453 F.3d 362, 370 (6th Cir. 2006) (internal quotations and citation omitted). D'Ambrosio met that standard, the court reasoned, because his Rule 60(b) motion relied on the same *Brady* claims that formed the basis of his original habeas relief. That fact distinguished *D'Ambrosio* from *Fisher v. Rose*, 757 F.2d 789 (6th Cir. 1985), a decision of the Sixth Circuit that ordered exhaustion in state court when a petitioner sought an unconditional writ based on a speedy trial issue distinct from the Confrontation Clause claim raised in his original petition. *Id.* at 389.

Although Wilson accurately describes *D'Ambrosio*, we are unpersuaded by that opinion. As Judge Boggs opined in dissent: "*Pitchess* makes clear that Rule 60(b) cannot be used to circumvent section 2254's exhaustion requirement, and its holding directly controls this case." *D'Ambrosio*, 656 F.3d at 393. We need not repeat the reasons underlying Judge Boggs's dissent because it suffices to say that they are essentially the same reasons we have articulated regarding Wilson's duty to exhaust his state court remedies.

But even assuming that *D'Ambrosio* was correct, Wilson's case is readily distinguishable. Unlike D'Ambrosio (but like the petitioner in *Fisher*), Wilson does not reprise his *Batson* claim in federal court. Rather, he makes what the District Court rightly characterized as an entirely new claim, namely, that he was denied his constitutional right to a speedy trial. Wilson has never presented this claim to the state courts and, unlike in *D'Ambrosio*—where the death of the key

15

witness demonstrated that *no* state retrial could rectify the *Brady* violation at issue in the original trial—Wilson does not contend that the *Batson* error that tainted his original trial will be repeated at his retrial. This critical factual distinction renders *D'Ambrosio* unhelpful to Wilson.

C

Finally, Wilson argues that even if exhaustion is required, it would be futile. Wilson Br. 33. Specifically, Wilson notes that his health has deteriorated so much since 2004 that he may no longer be competent to stand trial. *Id.* at 22–25. His "longstanding-delusional disorder" has intensified, and according to his expert, he is "not able to meaningfully assist counsel in the development of a defense that is important to the continuance of this proceeding." *Id.* at 23–24. Wilson also contends that the Commonwealth's main witness against him in the Swift case has also "suffered a significant and debilitating deterioration in his mental health during the period of delay" and consequently may be unavailable as a witness on retrial. *Id.* at 25–26. Wilson argues that the Commonwealth is responsible for these delays—first, by concealing the evidence underlying his *Batson* claim for ten years, and then by waiting more than five years after the District Court granted habeas to move to retry him.

We express no opinion regarding the merits of these claims, since our task is to determine which court should adjudicate them in the first instance. As Wilson admitted during oral argument in the District Court, he can "raise both a Sixth Amendment speedy trial claim and a state law speedy trial claim pursuant to Pennsylvania Rule of Criminal Procedure 600 in the state court." *Wilson*, 2012 WL 1382447

at *11. This is inadequate, Wilson insists, because forcing him to exhaust his new claims in state court "would subject him to the very harm that he sought to prevent when he filed the [Rule 60(b)] Motion." Wilson Br. at 29. Reduced to its essence, Wilson's argument "assumes, ultimately, either the incompetence or the bad faith of [the] state judiciary." *Eddleman v. McKee*, 586 F.3d 409, 413 (6th Cir. 2009). But as we have stated, "[b]y requiring exhaustion, federal courts recognize that state courts, no less than federal courts, are bound to safeguard the federal rights of state criminal defendants." *Parker v. Kelchner*, 429 F.3d 58, 61 (3d Cir. 2005) (quoting *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003)). And although the exhaustion requirement in habeas cases recognizes exceptions for "extraordinary circumstances," it presumes adequate state remedies. *Moore v. DeYoung*, 515 F.2d 437, 448 (3d Cir. 1975). Without more, we have held, "[n]othing in the nature of the speedy trial right . . . qualif[ies] it as a *per se* 'extraordinary circumstance'" exempt from the exhaustion requirement. *Id*. at 446.[4]

---

[4] Our sister courts have reached the same conclusion. *See, e.g.*, *Eddleman*, 586 F.3d at 413 (reversing district court's decision to bar retrial, describing it as "effectively . . . adjudicat[ing] a speedy-trial claim that had never been presented to, much less ruled upon, by the . . . state courts"); *Capps v. Sullivan*, 13 F.3d 350, 353–54 (10th Cir. 1993) (holding that successful habeas petitioner complaining of delay in retrial may have speedy trial claim, but would have to satisfy exhaustion requirement); *Moore v. Zant*, 972 F.2d 318, 320 (11th Cir. 1992) (noting that successful habeas petitioner can assert speedy trial rights related to the state's post-habeas delays in his upcoming state

## IV

For the reasons stated, we hold that the District Court had jurisdiction to adjudicate Wilson's Rule 60(b) motion filed after he had been issued a writ of habeas corpus. We also hold that the District Court did not err when it required Wilson to exhaust in state court the new claims he raised in his Rule 60(b) motion. We will affirm the judgment of the District Court.

---

proceedings); *Fisher v. Rose*, 757 F.2d 789, 791–92 (6th Cir. 1985) (indicating that speedy trial claims, including those stemming from delay in retrying successful habeas petitioners, are ordinarily subject to exhaustion and listing other cases that held the same).