

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-29-2007

# Gibbs v. Frank

Precedential or Non-Precedential: Precedential

Docket No. 06-2725

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Gibbs v. Frank" (2007). *2007 Decisions.* Paper 482.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/482

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-2725

BARRY GIBBS,

Appellant

v.

FREDERICK K. FRANK;
DISTRICT ATTORNEY OF
PIKE COUNTY; ATTORNEY
GENERAL OF PENNSYLVANIA

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 99-CV-1627
District Judge: The Honorable Edwin M. Kosik

Argued June 28, 2007

Before: SMITH,GREENBERG, *Circuit Judges*

1

and POLLAK, *District Judge**

(Filed: August 29, 2007)

Counsel:

Mark A. Berman (argued)
Hartman, Doherty, Rosa & Berman
126 State Street
First Floor
Hackensack, New Jersey 07601
*Counsel for Appellant*

Thomas W. Corbett, Jr., Attorney General
Richard A Sheetz, Jr., Executive Deputy
Attorney General
Amy Zapp, Chief Deputy Attorney General
Christopher D. Carusone, Senior Deputy
Attorney General (argued)
Office of Attorney General
Capital Litigation Unit
16th Floor, Strawberry Square
Harrisburg, PA 17120
*Counsel for Appellee*

_____

OPINION OF THE COURT

_____

*The Honorable Louis H. Pollak, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

2

SMITH, *Circuit Judge*.

Barry Gibbs appeals from the District Court's April 27, 2006 judgment denying his application for release. The primary issue presented in this appeal is whether the District Court complied with this Court's earlier mandate "to grant Gibbs' petition for a writ of habeas corpus and require the state to either release Gibbs or retry him within a specified time period." *Gibbs v. Frank*, 387 F.3d 268, 277 (3d Cir. 2004) (*Gibbs I*). The District Court set this time period at 120 days, but Gibbs' retrial did not take place within that time frame. The District Court excused this delay because it concluded that the delay was due in large part to Gibbs' own actions. The secondary issue presented in this appeal is whether the District Court properly interpreted its own order establishing the time period of 120 days to include an extension under state procedural rules for the filing of several pre-trial motions. We agree that the District Court complied with our prior mandate and properly exercised its discretion in excusing the brief delay in the Pennsylvania state court system. We will therefore affirm.

I.

Three times a jury has convicted Gibbs of the same

criminal homicide.[2] The Pennsylvania Supreme Court vacated Gibbs' first conviction after concluding that certain statements he made to the police were induced in violation of his Fifth Amendment rights. At Gibbs' first trial, a government psychiatrist who had conducted a court-ordered examination of Gibbs testified about statements made by Gibbs to the psychiatrist; the psychiatrist's testimony was presented to rebut Gibbs' diminished capacity defense. At Gibbs' second trial, the government psychiatrist again testified about Gibbs' statements. But at the second trial Gibbs did not raise a diminished capacity defense. Accordingly, on habeas corpus, this Court set aside Gibbs' second conviction, ruling that Gibbs' statements to the psychiatrist in a court-ordered examination were compelled, and hence the presentation of the psychiatrist's testimony as part of the government's affirmative case—i.e., in a non-rebuttal setting—violated Gibbs' Fifth Amendment rights. In remanding the case, this Court directed the District Court to enter an order conditionally granting habeas relief unless Gibbs was retried

---

[2]In March 1984, the Commonwealth of Pennsylvania charged Barry Gibbs with, *inter alia*, criminal homicide for shooting and killing a security guard named George Mehl. The Commonwealth alleged that Gibbs shot Mehl after a woman named Sharon Burke hired Gibbs to kill her husband, Wayne Burke, who was also a security guard. Mehl was shot as he sat beside Burke while they were at work. This murder forms the factual basis for each of Gibbs' three convictions.

4

"within a specified time period." *Gibbs I*, 387 F.3d at 277.[3]

The District Court received the certified order in lieu of the formal mandate from this Court on November 17, 2004. That Court issued an order on November 18, 2004 directing the Commonwealth to either release Gibbs or retry him "within 120 days in accordance with the Third Circuit Court's directive." The District Court noted that 120 days would run on March 18, 2005. Earlier in November, Gibbs had written to his former state counsel from the first trial, Ronald M. Bugaj, informing him that the Third Circuit had granted him a new trial, that the state was petitioning for a rehearing and then certiorari, and that although he had a lawyer for his appeal, a new lawyer would have to be appointed for his retrial. Gibbs indicated that Bugaj should notify him if Bugaj was interested in representing him. On November 12, before the District Court issued its order, Bugaj responded to the letter, expressing an interest in the case. In late November, Gibbs wrote Attorney Bugaj and suggested that Bugaj contact Mark A. Berman, who represented him before the Third Circuit in *Gibbs I,* on how to proceed.

In late December, Berman wrote to Judge Joseph F. Kameen of the Court of Common Pleas of Pike County, stating

---

[3]For a detailed factual background of Gibbs' case (which we do not consider necessary to the disposition of this appeal), see *Gibbs I*, 387 F.3d at 270-71; *Pennsylvania v. Gibbs*, 553 A.2d 409 (Pa. 1989).

5

that counsel should be appointed for Gibbs "immediately," and that Bugaj was willing to take the appointment. Judge Kameen was unaware of the District Court's order to retry Gibbs because it had been electronically served only on the parties. This contact by Bugaj was, therefore, the first indication to the state court that Gibbs would need new counsel to be appointed for a retrial. In January 2005, Judge Kameen wrote to the Chief Public Defender, directing that a public defender undertake the representation of Gibbs at his trial, which was set for March 7, 2005. Assistant Public Defender Robert F. Bernathy was designated. Shortly thereafter, Gibbs wrote to Bugaj advising of the appointment of Bernathy and stating that he wrote to the Public Defender objecting to the appointment. In mid-February, the Commonwealth filed a motion objecting to the appointment of Public Defender Bernathy because his father had been part of the original team of Pennsylvania State Police troopers investigating the homicide more than two decades earlier.

On February 24, 2005, Gibbs filed a pro se motion for appointment of counsel in the Pike County Court of Common Pleas, outlining the history of the case and claiming that he had a conflict with the public defender because the public defender had supposedly ineffectively represented him at earlier trials. Four days later, the public defender filed a motion to withdraw as Gibbs' counsel.

On March 4, 2005, Judge Kameen granted the motion to withdraw, and appointed Bugaj and an associate to represent

6

Gibbs. On March 7, 2005, the day the trial was scheduled to begin, Bugaj moved to continue the trial until May 2, 2005 so that he could file pretrial motions. During the hearing on that motion the prosecutor stated that "the Commonwealth is ready to proceed today," but conceded that it had no objection to the continuance. The defense was given until April 1, 2005 to file its pretrial motions. On April 1, the defense filed an omnibus motion, asserting several issues. The defense also made an oral motion for Judge Harold Thomson to recuse himself because he had presided over the first two trials. After the defense filed a written recusal motion, Judge Thomson recused himself on April 28. Judge Kameen ruled on the omnibus motion in an opinion on May 20, 2005. He noted that the continuances previously granted had been at the request of the defense, and that 10 pre-trial motions had also been filed. Because many of the issues raised by the defense had previously been determined by the trial court, Judge Kameen comprehensively addressed only four issues: a motion to suppress specific evidence; two motions to dismiss charges; and a motion for release on nominal bail because Gibbs was not going to be tried within the 120 days (which was March 18, 2005) set by the District Court.

In early May 2005, the District Court docketed a letter by Bugaj's associate that stated that Gibbs wished to file an application for release based upon the Commonwealth's violation of the previous order that Gibbs be tried within 120 days. The attorney requested that counsel be appointed to represent Gibbs in these federal court proceedings. On May 9,

2005, the District Court appointed Berman to represent Gibbs in any further proceedings. One day later, Berman prepared an "Application for Release" that asserted that the Commonwealth had disregarded the order of the District Court and "deliberately acted in a manner that made it impossible for such a trial to take place." For reasons not clear from the record before us, the Application was not docketed until March 6, 2006. By order dated April 27, 2006, the District Court denied Gibbs' application for release. This appeal followed.[4]

## II.

The District Court had continuing jurisdiction under 28 U.S.C. §§ 1331 and 2254 over Gibbs' application for release from confinement. *See Mickens-Thomas v. Vaughn*, 355 F.3d 294, 303 (3d Cir. 2004); *Phifer v. Warden*, 53 F.3d 859, 865 (7th Cir. 1995) (declaring that District Court had continuing

---

[4]Gibbs' third trial did not commence until June 20, 2005. The Pike County Court docket indicates that Gibbs was found guilty of counts I (criminal homicide), II (criminal conspiracy engaging in criminal homicide), III (criminal conspiracy engaging in aggravated assault), and IV (aggravated assault). Gibbs was sentenced to 10 to 20 years for homicide, 5 to 10 years for conspiracy to commit homicide, 5 to 10 years for conspiracy to commit aggravated assault, and 5 to 10 years on aggravated assault. The sentences are to run consecutively, with credit for time served since March 29, 1984.

jurisdiction to address alleged noncompliance with conditional writ of habeas corpus). Because Gibbs' notice of appeal is from a final order denying his application to make the conditional writ absolute and to release him, we exercise jurisdiction pursuant to 28 U.S.C. § 1291. The Commonwealth contends that we lack jurisdiction because a certificate of appealability ("COA") has not been granted. Our analysis in *Mickens-Thomas* demonstrates, however, that we have jurisdiction.

In *Mickens-Thomas*, 355 F.3d at 303, we revisited the issue of whether an *ex post facto* violation had occurred on remand as a result of the Pennsylvania Board of Probation and Parole's conduct with regard to Mickens-Thomas' renewed parole application. We noted that we had found a violation in the first appeal and remanded the matter for the Board to rectify the violation. *See Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003). We observed that our mandate in the first appeal, as set forth in several paragraphs of the opinion, "could not be clearer." *Mickens-Thomas*, 355 F.3d at 302. Yet the Board's conduct once the matter was remanded was again deficient.

After relating the factual history of the case, we considered whether we had jurisdiction. We noted that, even though no COA had been granted by the District Court, Mickens-Thomas' notice of appeal constituted a request for a COA under Federal Rule of Appellate Procedure 22(b)(1). We further stated that, "[o]f utmost importance, this Court has continuing jurisdiction over this appeal to determine whether the

9

Board has complied with the District Court's remand order and our remand mandate." *Id.* at 303. As support we cited *Phifer*, 53 F.3d at 865. In *Phifer*, the Seventh Circuit declared that "[w]hen a habeas petitioner alleges noncompliance with a conditional order [granting habeas relief], jurisdiction exists for the purpose of determining whether the state acted in accordance with the court's mandate." *Id.* The Court explained that the district court's jurisdiction to address Phifer's claim "was encompassed in the same power that would have enabled the court to release Phifer." *Id.*

The procedural posture of this case brings it within the *Mickens-Thomas* doctrine, giving us jurisdiction over this appeal. At issue here is whether the District Court properly executed, and whether the state court properly followed, this Court's conditional writ of habeas corpus. We exercise plenary review over whether the District Court correctly interpreted the instructions of our prior opinion. *See Cooper Distrib. Co., Inc. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 546 (3d Cir. 1999); *Snow-Erlin v. United States*, 470 F.3d 804, 807 (9th Cir. 2006) (citation omitted). We review a district court's interpretation of its own order for abuse of discretion. *Cf. In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 192 (3d Cir. 2000) ("We review the District Court's modification of its own order establishing a deadline for abuse of discretion.").

10

III.

Gibbs argues that he should be permanently released because the Commonwealth failed to comply with the court order to afford him a trial within 120 days.[5] The first question

---

[5]We are not free to review the propriety of the state court ruling during Gibbs' third trial, which allowed the Commonwealth to introduce testimony of a defense expert who was appointed prior to Gibbs' first trial in 1984 to explore the possibility of a mental infirmity defense. *See Gibbs I*, 387 F.3d at 271. *Gibbs I* held that the admission by the prosecution of statements made by Gibbs to a government psychiatrist during a court-ordered examination were compelled and therefore violated his Fifth Amendment rights. This testimony was offered in the first trial to rebut Gibbs' diminished capacity defense, a defense he did not raise during the second trial. On appeal, Gibbs tries to place the admission of testimony of *his own* expert on equal footing to that of the testimony by the *prosecution's* expert. *Gibbs I* did not address this issue, and it falls outside the purview of the holding in *Gibbs I*. Indeed, in *Gibbs I*, we recognized the different Fifth Amendment implications for testimony of state experts versus testimony of defense experts. *See id*. at 274.

It is well-settled that we may not address an issue if it has not been exhausted. Gibbs now makes a direct challenge on this appeal to the admission of his expert's testimony. *See* 28 U.S.C. § 2254(b)(1)(A). Our continuing jurisdiction extends only to whether the District Court exercised proper discretion in fulfilling our mandate to require the Commonwealth to either

11

we address is whether the District Court properly interpreted the instructions of *Gibbs I* "to grant Gibbs' petition for a writ of habeas corpus and require the state to either release Gibbs or retry him within a specified time period." *Gibbs I*, 387 F.3d at 277. The District Court's November 18, 2004 order directed the Commonwealth to either release Gibbs or retry him "within 120 days in accordance with the Third Circuit Court's directive." The District Court selected this time frame in part because Pennsylvania state criminal procedure uses 120 days. Pennsylvania Rule of Criminal Procedure 600(D)(1) states that "[w]hen a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within 120 days after the date of the order granting a new trial, if the defendant is incarcerated on that case." We note at the outset that the *Gibbs I* instruction did not require the 120-day time period

---

release Gibbs or retry him within a specified time period. Gibbs' appeal raises both this issue as well as the propriety of the state court's admission of statements by the defense expert. However, "[e]xhaustion requires that petitioner present in substance the same claim he is now seeking to have the federal courts review." *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). As the record before us indicates that Gibbs did not at the time of the filing of this appeal seek state court review of the admission of these statements, we will not address this issue here. *See Parker v. Kelchner*, 429 F.3d 58, 61-62 (3d Cir. 2005). In essence, we are dismissing Gibbs' habeas petition without prejudice.

12

decreed by the District Court. Our mandate was only that retrial take place within a "specified time period." Implicit in "specified," however, is a reasonableness requirement. *See, e.g.*, *Richmond v. Lewis*, 506 U.S. 40, 52 (1992) (directing District Court to enter a conditional order granting habeas unless the State corrected the constitutional error within a reasonable period of time); *Boles v. Stevenson*, 379 U.S. 43, 46 (1964) (remanding "to the District Court to allow the State a reasonable time to afford Stevenson a hearing or a new trial, failing which Stevenson is entitled to his release"); *Rogers v. Richmond*, 365 U.S. 534, 549 (1961) ("The case is remanded to the Court of Appeals to be held in order to give the State opportunity to retry petitioner, in light of this opinion, within a reasonable time."); *Dowd v. U.S. ex rel. Cook*, 340 U.S. 206, 210 (1951) (directing the Court to enter the appropriate order to "allow the State a reasonable time in which to afford respondent the full appellate review he would have received but for the suppression of his papers, failing which he shall be discharged"). The District Court's selection of 120 days was eminently reasonable. *See Pazden v. Maurer*, 424 F.3d 303, 319 (3d Cir. 2005) (reversing a district court's denial of federal habeas relief and remanding "with instructions to grant the writ if the defendant is not retried in 180 days"); *Slutzker v. Johnson*, 393 F.3d 373, 390 (3d Cir. 2004) (120 days); *Holloway v. Horn*, 355 F.3d 707, 730 (3d Cir. 2004) (120 days).

The second issue we address is whether the District Court abused its discretion by interpreting its own time period of 120

13

days to include a reasonable period of excusable delay. This issue breaks down into two sub-issues, one primarily legal and the other primarily factual.

The legal sub-issue is whether the District Court had any discretion to excuse the Commonwealth from strictly complying with the District Court's initial 120-day time period. We hold that, so long as its actions are reasonable under the circumstances, a district court has the authority to alter the time period it originally sets for retrial to commence pursuant to a grant of conditional habeas relief. In *Schlup v. Delo*, 513 U.S. 298, 319 (1995), the Supreme Court acknowledged that it has "adhered to the principle that habeas corpus is, at its core, an equitable remedy." As an equitable remedy, a federal court has wide latitude in setting the time period for conditional relief. *See Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) (stating that "a court has broad discretion in conditioning a judgment granting habeas relief").

Consistent with the Supreme Court's observations in *Hilton* and *Schlup*, the Seventh Circuit recognized in *Phifer*, 53 F.3d at 864-65, that "[c]onditional orders are essentially accommodations accorded to the state. They represent a district court's holding that a constitutional infirmity justifies [the] petitioner's release. The conditional nature of the order provides the state with a window of time within which it might cure the constitutional error. Failure to cure that error, however, justifies the district court's release of the petitioner." The

14

Seventh Circuit in *Phifer* further noted that "[a] conditional order's framework contemplates that a district court will eventually make an assessment concerning compliance with its mandate." *Id.* at 865; *see also Smith v. Lucas*, 9 F.3d 359, 366-67 (5th Cir. 1993) ("In the conditional writ cases, the federal court has determined that it has the authority to order immediate release of the prisoner as a result of the federal law violation; the court chooses, however, to delay the writ to allow the state to correct the problem as best it can.").

In light of the broad discretion a district court possesses in fashioning a conditional order, the Seventh Circuit in *Gilmore v. Bertrand* stated that it logically follows that this discretion "includes the ability to grant the state additional time beyond the period prescribed in a conditional writ to cure a constitutional deficiency." 301 F.3d 581, 583 (7th Cir. 2002) (per curiam); *see also Chambers v. Armontrout*, 16 F.3d 257, 261 n.2 (8th Cir. 1994) (noting that the District Court did not err by granting additional time to retry the prisoner, particularly since there was "some evidence that the delay in retrial had been attributable at least in part to the defense"); *Moore v. Zant*, 972 F.2d 318, 321 (11th Cir. 1992) (concluding that the court could give the state additional time to correct a constitutional violation even after delay of more than 20 months); *Frazier v. Roberts*, 441 F.2d 1224, 1229 (8th Cir. 1971) (instructing the District Court that it should order retrial within 30 days or within a reasonable extension of such period).

15

We agree with the Seventh Circuit's holding in *Gilmore*, as it is in accord with the Supreme Court's jurisprudence regarding the broad discretion given to district courts in fashioning habeas relief. Gibbs attempts to distinguish *Gilmore* because, in that case, the state made a motion to the federal district court for an extension, whereas in this case, the state never made a motion in District Court for additional time to retry Gibbs. This distinction in this context has no legal significance. To begin, it is not even clear that, in *Gilmore*, the state had made its motion prior to the passing of the deadline. 301 F.3d at 582 ("After the State failed to meet the 120-day deadline, the district court granted its motion for a 45-day extension of the stay."). Second, and more importantly, it is of no moment whether the Commonwealth seeks an extension directly from the District Court during the initial deadline or, as happened here, provides a post hoc justification for the trial delay. Such a maneuver may be strategically unwise from the Commonwealth's perspective because of the broad discretion afforded to a district court in conditioning (and granting) habeas relief. *See Grasso v. Norton*, 520 F.2d 27, 37-38 (2d Cir. 1975). Nonetheless, we fail to see why a post-deadline justification offered by the state for the delay in a prisoner's retrial should be categorically rejected as a legal matter. The broad discretion inherent in a district court's habeas powers include the ability to evaluate whether the Commonwealth has provided a legitimate reason for its delay in retrying a defendant subject to a conditional habeas writ.

16

The factual sub-issue, then, is whether the District Court abused its discretion in making the factual findings that led it to excuse the delay in Gibbs' state trial. Gibbs argues that the District Court "blamed [him] for delaying his own retrial by scheming to delay the appointment of counsel in his own behalf. The district court's finding is not even supported by the inadequate record before it, which in any event should have been supplemented by an evidentiary hearing." Appellant's Op. Br. 28-29. We disagree. The actual findings of the District Court were balanced in assigning blame between the Commonwealth and Gibbs, and the record before the District Court provided ample support for its findings.

In its memorandum, the District Court acknowledged that the Court of Common Pleas of Pike County was unaware of the remand for retrial until December 30, 2004, when Gibbs' attorney wrote to Judge Kameen.[6] The District Court also

_____

[6]One troubling aspect of this case is that the Commonwealth did not inform the Court of Common Pleas of Pike County of the time frame for Gibbs' retrial. The District Court ordered retrial on November 18, 2004, but several weeks passed before Gibbs' counsel, Mark Berman, told the Court of Common Pleas about the conditional writ. We know of no official notification procedure within this circuit for informing state courts when an appellate or district court has issued a conditional writ of habeas corpus. As a consequence, service of the District Court opinion and judgment was effected upon only

17

recognized that it was "out of the loop with respect to any state court proceedings after its Order of November 18, 2004 until the letter from Mr. Bugaj on May 2, 2005." The District Court cited Gibbs' efforts to object to the appointment of a public defender so that he could have his own counsel instead. Shortly after the Commonwealth became aware that the public defender's father was a police officer involved in the initial investigation of the homicide, it filed a motion objecting to the appointment. Gibbs followed suit. The District Court also noted that Gibbs' counsel requested a continuance on the day the trial was to begin. The

---

the parties to this habeas action.

The interests of comity strongly counsel that the issuance of a conditional writ of habeas corpus by a federal court be conveyed promptly to the state trial court that must rectify the constitutional deprivation. In future conditional writ cases, we believe that it is appropriate for the State or Commonwealth to bear the burden of informing state courts about the necessity of a retrial promptly after the conditional writ is issued. Nonetheless, in an effort to avoid notification problems, we observe that a district court could easily require the State or Commonwealth to timely serve the state trial court with a copy of the opinion and judgment containing the conditional writ, and then file a certificate notifying the District Court that it has fulfilled its service requirement. While Gibbs suffered no prejudice in this case because of the multi-week delay, there is no guarantee that a petitioner granted relief in a future habeas proceeding will have an attorney as conscientious as Mr. Berman.

transcript of the hearing on the motion indicated that the Commonwealth was ready to proceed but had no objection to defense counsel's request for a continuance. The Commonwealth tried Gibbs in June 2005, after Gibbs filed—and the state court ruled upon—his omnibus motion. The District Court concluded that "the state did not request additional time, presumably because the state court scheduled retrial for March 7, 2005, well within the March 18, 2005 timetable, and before the defense found it necessary to seek a continuance of the trial date compelled by events wholly attributable to the circumstances making it impossible to adhere to the March 7 trial date." We see nothing in the record that contradicts this statement.

The District Court also noted that it directed retrial in 120 days based in part on Pennsylvania Rule of Criminal Procedure 600(D)(1), which mandates a new trial within 120 days after the date of the order granting a new trial, if the defendant is incarcerated and if no appeal has been perfected. Pennsylvania Rule of Criminal Procedure 600(C)(3)(b) further states that "[i]n determining the period for commencement of trial, there shall be excluded therefrom ... such period of delay at any stage of the proceedings as results from ... any continuance granted at the request of the defendant or the defendant's attorney." A federal district court "should give careful consideration to the appropriate demands of comity in effectuating its habeas corpus decree." *Parisi v. Davidson*, 405 U.S. 34, 46 (1972); *Henderson v. Frank*, 155 F.3d 159, 168 (3d Cir. 1998). Here, the District

19

Court looked in part to analogous state court rules to conclude that it "is empowered to exercise some discretion in excusing the untimeliness of the retrial." The District Court's invocation of Pennsylvania state rules as a basis for exercising its broad habeas discretion further supports our conclusion that it properly excused the delay in retrying Gibbs. Any delay brought about by a continuance request from the defense should not be included in the 120-day time frame.

For these reasons, we refuse to conclude that the District Court made its factual finding on a "clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990). We will therefore affirm the judgment of the District Court denying Gibbs' application for release.

20