**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 09-3744

LOUIS MICKENS-THOMAS,

Appellant.

v.

SUPERINTENDENT DONALD VAUGHN;
PENNSYLVANIA BOARD OF PROBATION & PAROLE:
THE PENNSYLVANIA BOARD OF PARDONS;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

Appellees.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-99-cv-06161)
District Judge:  Hon. Ronald L. Buckwalter

Argued on January 11, 2011

Before:  BARRY and ROTH, <u>Circuit Judges</u>
and HAYDEN*, <u>District Judge</u>

(Opinion filed: January 20, 2011)

*Honorable Katharine S. Hayden, United States District Judge for the District of New Jersey, sitting by designation.

David Rudovsky, Esquire **(Argued)**
Jonathan H. Feinberg, Esquire
Kairys, Rudovsky, Messing & Feinberg
718 Arch Street
Suite 501 South
Philadelphia, PA   19106

Leonard N. Sosnov, Esquire
1027 Abington Avenue
Wyndmoor, PA   19038

                  Counsel for Appellants


Robert N. Campolongo, Esquire
Pennsylvania Board of Probation & Parole
1400 Spring Garden Street
Philadelphia, PA   19130

Randall J. Henzes, Esquire
Office of Attorney General of Pennsylvania
21 South 12th Street, 3rd Floor
Philadelphia, PA   19107

John G. Knorr, III, Esquire **(Argued)**
Kenneth L. Joel, Esquire
Office of Attorney General of Pennsylvania
Strawberry Square, 15th Floor
Harrisburg, PA   17120

Arthur R. Thomas, Esquire
Pennsylvania Board of Probation & Parole
1101 South Front Broad Street, Suite 5100
Harrisburg, PA   17104-2517

                  Counsel for Appellees

**ROTH**, <u>Circuit Judge</u>:

Petitioner Louis Clinton Thomas appeals the District Court order dismissing his motion to enforce a previous habeas corpus judgment or, alternatively, for habeas corpus relief following the denial of his application for re-parole. In *Mickens-Thomas v. Vaughn*, 321 F.3d 374 (3d Cir. 2003) (*Mickens-Thomas I*), and *Mickens-Thomas v. Vaughn*, 355 F.3d 294 (3d Cir. 2004) (*Mickens-Thomas II*), we set out the constitutional boundaries necessary for the Board to follow in ruling on Thomas's parole applications. We conclude that the Board has repeatedly failed to comply with our instructions to evaluate Thomas's request for parole under the parole laws and guidelines that existed at the time of Thomas's conviction, not under the laws and guidelines as amended in 1996 and thereafter. We will therefore grant unconditional habeas corpus relief to Thomas.

## I. **Factual and Procedural Background**

Thomas, who is 82 years old, was convicted in 1966 of the rape and murder of a 12-year-old girl. After new evidence cast doubt on the basis for his conviction, he was retried and convicted in 1969.[1] In 1995, Pennsylvania Governor Robert P. Casey commuted Thomas's life sentence, along with the sentences of 265 other inmates held in Pennsylvania prisons. Thomas then became eligible for parole on July 21, 1996. Since

---

[1] Thomas has consistently maintained his innocence throughout his two trials and forty-seven years of incarceration Whether he is guilty or innocent is not, however, relevant to the present proceeding.

that time, Thomas has repeatedly sought release on parole. Each request for parole has been denied. Each denial has been based primarily on statutory requirements that Pennsylvania adopted after Thomas's conviction, requiring him to undergo a sex offender treatment program and, in the process, to admit his guilt. The Board has persistently failed to apply this Court's 2004 decision, which explicitly states that the Board's application of this requirement represents "a continuous course of *ex post facto* violations," *Mickens-Thomas II*, 355 F.3d at 307.

Thomas unsuccessfully sought parole in 1997, 1998 and 2000.[2] In December 1999, Thomas filed a habeas petition, alleging that he was unconstitutionally denied parole because the Board retroactively applied a parole regime that was not in existence at the time of his conviction and that adversely affected his applications for parole in violation of the *ex post facto* clause of the United States Constitution. The District Court granted his petition in 2002 and remanded the matter to the Board to consider Thomas's application under pre-1996 law. *Mickens-Thomas v. Vaughn*, 217 F. Supp. 2d 570 (E.D. Pa. 2002). This Court affirmed the District Court's judgment in 2003, concluding that the Board had committed multiple *ex post facto* violations and remanding the matter to the District Court for remand to the Board to conduct proceedings consistent with pre-1996 parole policies and guidelines. *Mickens-Thomas I*, 321 F.3d at 393.

Rather than adhering to this Court's directive on remand, the Board "considered the same old factors in the same manner found by us to be violative of the *ex post facto*

---

[2] The Parole Board denied Thomas's third parole application in March 2000, a few months after his original habeas petition was filed.

prohibition in our earlier opinion." *Mickens-Thomas II*, 355 F.3d at 304. Thomas filed his second habeas petition to contest the Board's decision; the District Court denied it. This Court reversed, finding that the Board "defie[d] our instruction to discontinue its manipulation of hitherto insignificant factors of Thomas's non-admission of guilt and his participation only in the 'denier' part of sex offender therapy program." *Id.* at 305. We additionally found that the Board committed a "new and glaring" *ex post facto* violation on remand by retrospectively subjecting Thomas to a post-1996 requirement that he participate in the "admitter" part of a sex offender therapy program to qualify for parole. *Id.* at 306.[3] Because "[t]he combination of willful noncompliance, bad faith, and a sufficient inference of retaliation or vindictiveness on the part of the Board convince[d] us that it would be futile to further remand Thomas's parole application to the Board for a fair disposition under the pre-1996 regime of parole laws and guidelines," *id.* at 310, we granted Thomas unconditional habeas corpus relief.

While on parole, the Parole Board assigned Thomas to an "admitters" sex offender treatment program. For more than a year after his release, Thomas complied with parole regulations, attended a treatment program, and was not the subject of any police or community complaints. In June of 2005, however, Thomas reported to his parole officer that he kissed a woman at church against her will. This conduct resulted in Thomas's

---

[3] The Board's requirement that Thomas participate in the "admitter" part of a sex offender treatment program to qualify for parole is a retroactive application of 42 Pa. Stat. Ann. § 9718.1. This statute, enacted in December 2000, provides that a sexual offender involving the abuse of a minor "shall not be eligible for parole unless the offender has . . . participated in the [sex offender program prescribed by the Department of Corrections]."

5

discharge from the treatment program. Failure to complete the program was a violation of parole and was the basis for Thomas's arrest.

On February 17, 2006, as a result of the parole violation, the Board ordered Thomas to serve nine months of incarceration, known as "backtime," and to "comply with the institution's prescriptive program requirements and have no misconducts." Thomas then filed a motion in the District Court to enforce the habeas judgment set forth in *Mickens-Thomas II*. After hearings before the District Court, Thomas's motion was denied on the basis that the habeas judgment applied only to Thomas's parole application, not parole revocation. While serving his nine months of backtime, the prison authorities determined that Thomas did not need any alcohol or drug treatment, nor did he require any mental health services.

After serving his nine months, Thomas applied for re-parole. It was denied based on (1) his "need for sex offender treatment"; (2) his "need to participate in and benefit from a treatment program for sex offenders"; (3) his prior supervision history; and (4) his "total denial of instant offense." The Board stated that he "must participate in sex offender treatment" and "maintain a clear conduct record and earn an institutional recommendation for parole" in order to be favorably considered at his next parole hearing to be held in or after July 2007. Although the Board did not explicitly refer to 42 Pa. Stat. Ann. § 9718.1, it is clear that, as before, the statute served as the primary reason for refusing to release Thomas on parole. Since then, Thomas has repeatedly applied for

parole and repeatedly been denied parole for failure to participate in an admitters therapy program.[4]

On March 6, 2008, Thomas filed an Application for Leave to File Original Process in the Supreme Court of Pennsylvania. On November 3, 2008, the court granted Thomas's application, but in the same order summarily denied his habeas petition.

Thomas then filed a Motion to Enforce Judgment on March 18, 2009, in the Eastern District of Pennsylvania. The District Court denied Thomas's motion, finding that by releasing Thomas, the Board had complied with the previous habeas judgment and that Thomas had failed to exhaust his state court remedies for the alleged constitutional claims from the re-parole denial. *Mickens-Thomas v. Vaughn*, No. 99-6161, 2009 WL 2855907 (E.D. Pa. Sept. 3, 2009). The District Court therefore did not reach the issue whether the Board's justification for denying Thomas re-parole constituted continuing violations of this Court's directives in *Mickens-Thomas I* and *Mickens-Thomas II*. On May 12, 2009, while the District Court was considering Thomas's motion, the Board again refused to release him on parole based on his "need to participate in sex offender programming." The Board reiterated that it would consider at Thomas's next parole hearing whether "he successfully completed a treatment program for: sex offenders."[5]

Thomas appealed to this Court.

---

[4]    Thomas has requested parole every year since 2006. Each request has been denied based on his refusal or failure to successfully complete an admitters sex offender program.

[5]    Thomas was once again denied parole at his June 2010 parole hearing.

## II. Discussion

### A. Jurisdiction, Standard of Review, and Exhaustion Requirement

The District Court had jurisdiction under 28 U.S.C. §§ 1131, 2241 and 2254(a). We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We also have continuing jurisdiction to enforce our prior order granting habeas relief, and have jurisdiction where, as here, "we construe[] a timely filed notice of appeal as a request for a certificate of appealability . . . ." *Mickens-Thomas II*, 355 F.3d at 303; *see also Gibbs v. Frank*, 500 F.3d 202, 205-06 (3d Cir. 2007). "We exercise plenary review over whether the District Court correctly interpreted the instructions of our prior opinion[,]" *id.* at 206, and over its legal conclusions, and review its factual findings for clear error. *Mickens-Thomas I*, 321 F.2d at 376 n.2; *Rios v. Wiley*, 201 F.3d 257, 262 (3d Cir. 2000).

The grant of a writ of habeas corpus is conditioned upon the exhaustion of remedies available in the state court, though not where "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). Where a state court has ruled on the merits of a claim, habeas relief is conditioned upon concluding that a state court decision is contrary to or unreasonably applies clearly established federal law, or unreasonably determines the facts in light of the evidence. *Id.* § 2254(d). Under the facts of this case, the requirements of Section 2254 have been satisfied: (1) the underlying issue—the application of a parole rule in violation of the *ex post facto* clause—has been litigated throughout the Pennsylvania courts and several times before this Court, and (2) Thomas raised the instant claims in original habeas actions in the Supreme Court of Pennsylvania, which has original, non-

8

exclusive jurisdiction over habeas claims per 42 Pa. Stat. § 721(1), and which, rather than transfer or dismiss those actions, granted his applications for leave to file original process and then denied his petitions.

### B. Violation of the Rule in *Mickens-Thomas II*

In the face of an unambiguous record to the contrary, appellees assert both in their response brief and during oral argument that the Board continues to refuse to release Thomas on re-parole because "[h]e engaged in a re-offense pattern – an escalating pattern of high-risk behavior that endangered both the therapists trying to treat his deviance and the community at large – and because [of] his continuing refusal to engage in his own rehabilitation . . . ." This assertion is belied by both the record – or lack thereof – and by statements made by appellees' counsel during oral argument. The record demonstrates that, but for the Board's requirement that Thomas complete a sex offender therapy program in which he must admit guilt, Thomas would have been released on re-parole after the completion of his nine-month backtime. As we have determined in *Mickens-Thomas I* and *II*, that requirement is a violation of the *ex post facto* clause of the Constitution.

Appellees claim Thomas is not being paroled because he has demonstrated an "escalating pattern of high risk behavior." This claim relies on a single incident in which Thomas kissed a woman at church against her will.[6] This incident does not credibly

---

[6]  Appellees cite three other instances in support of their contention that Thomas presents a danger to the community. First, appellees assert in their response brief that Thomas sexualized the relationship with his therapist. Second, during oral argument appellees' counsel explained that Thomas would fix broken umbrellas and offer them to

9

constitute an "escalating pattern of high risk behavior." First, Thomas self-reported this violation – the woman did not report his conduct – and if Thomas had not reported the incident, he would not have been discharged from the treatment program and arrested as a technical parole violator.[7] Second, appellees' characterization of this event as presenting a "significant danger to [the treatment provider's] staff and to the community" is undermined by the fact that he was charged with only a "technical" parole violation. *See* 75 Pa. Code § 75.4 (technical violations are punished with a presumptive range of 3-18 months incarceration). The Board could have ordered Thomas to serve more backtime than the presumptive range only if it had found the presence of aggravating circumstances, and provided sufficient written justification for its decision, *see id.* § 75.3(b)-(c); the Board, however, imposed a backtime of nine months, suggesting that it did not perceive Thomas to be a threat to public safety. Finally, there are no police contacts, community complaints, or other evidence in the record substantiating appellees'

---

women in the rain. And finally, Thomas would offer a ride home to women who were stranded in the rain. Not only are these explanations, in this Court's opinion, facially insufficient to support Thomas's characterization as a danger to the community, but each episode finds no support in the record. As a consequence, we find them not credible, and refuse to consider them. 3d Cir. L.A.R. 28.3(c) ("All assertions of fact in briefs must be supported by specific reference to the record."); *see also Lizardo v United States*, 619 F.3d 273, 276 n.6 (3d Cir. 2010).

[7] Thomas's parole agent, Anthony Mondello, testified that the Thomas's technical violation typically results in 1-2 months of incarceration, another fact suggesting that the violation was not – and generally is not – considered indicative of a propensity to endanger the public. Moreover, the program *required* Thomas to report all feelings and thoughts to his therapist. That he did so, and yet appellees maintain that he has been unremittingly recalcitrant in meeting their expectations of him, suggests all the more that the Board's denials of his re-parole stem not from conduct on his part, but from the single-minded application of a requirement that this Court has expressly held may not be applied to him.

10

claim that Thomas presented a danger to the community. We therefore do not credit the claim that the Board continues to refuse Thomas's requests for parole based on an "escalating pattern of high risk behavior."

This explanation, in addition to lacking credibility, appears to be a post-hoc rationalization to disguise the Board's real reason for denying Thomas's parole: his refusal to participate in a sex offender program that requires he admit guilt. Supporting this conclusion is a statement made by a Department of Corrections agent after Thomas received his first re-parole refusal notice. On March 28, 2007, the agent wrote: "Mr. Thomas – I placed you on the list for [therapy]. Unfortunately there is a waiting list at this time. Also, please be advised that you will be removed from the group after 1-3 months if you do not admit your offense. This will then affect your parole decision as you will be consider[ed] non-compl[iant]." Additionally, the Board has repeatedly cited Thomas's failure to complete the prescribed sex therapy program as a reason for his denial of parole. We therefore do not credit appellees' assertion that the Board did not apply section 9781.1 retroactively to Thomas.

Appellees' counsel essentially conceded as much during oral argument. After quoting the notation cited in the preceding paragraph, the Court asked whether it can assume "that this is the situation [Thomas] faces now with respect to curing what the grounds for denying parole are?" Appellees' counsel answered, "Yes." In other words, appellees' counsel conceded that Thomas will not be released on parole until he admits guilt as part and parcel of a sex offender treatment program.

In *Mickens-Thomas II*, we concluded that, despite not explicitly mentioning section 9781.1, the Board was applying that section retroactively to Thomas as grounds for denying parole. The same situation is present here, where appellees continue to claim unconvincingly that section 9781.1 is not being applied. We therefore have no difficulty finding that Thomas is being denied parole based on his refusal to participate in and successfully complete a sex offender therapy that requires him to admit guilt.

In light of the record and the admissions made by appellees' counsel during oral argument, we find that the Board's application of section 9781.1 to Thomas's parole application constitutes a "continuous course of *ex post facto* violations." *Mickens-Thomas II*, 355 F.3d at 307. This conduct is in direct contravention of this Court's order in *Mickens-Thomas II*, that "requir[ing] that Thomas participate in the 'admitter' part of [a] sex offender therapy program to qualify for" re-parole is a "glaring instance of *ex post facto* violation," 355 F.3d at 306. We therefore conclude here, as there, that the appropriate remedy under these circumstances is to grant Thomas unconditional habeas relief. *See id.* at 310 (citing *Bridge v. United States Parole Comm'n*, 981 F.2d 97, 105 (3d Cir. 1992)).

## III. Conclusion

For the foregoing reasons, we will vacate the judgment of the District Court and we direct Donald Vaughn, Superintendent of the Pennsylvania State Correctional Institute at Graterford, and the Board to release Thomas on parole forthwith.[8]

---

[8] We order Thomas released forthwith as soon as his attorney has found suitable accommodations for him pending his contact with the parole office.